STATE OF WEST VIRGINIA

**Kathryn C.,**
**Respondent Below, Petitioner**

**FILED**

October 18, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 12-1542** (Kanawha County 07-D-10)

**Mark C.,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Kathryn C., by counsel Clinton W. Smith, appeals the Circuit Court of Kanawha County's "Final Order Refusing Petition for Appeal" that affirmed the family court's "Order Regarding Parenting Time and Designation of School Year Parent." The family court's order designated Respondent Mark C. as the 2012-2013 school year parent for the couple's two minor children and established parenting time for petitioner.[1] Respondent did not file a brief in response. Sharon Childers, Esq., guardian ad litem for the two children, filed a summary response in support of the circuit court's order. David Hughart, Esq., appointed counsel for the older child, M.C., filed a summary response in support of petitioner's arguments as they relate to custody of M.C. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner and respondent divorced in or around 2008. The couple has two children, J.C., born December 17, 2004, and M.C., born August 4, 1998. From the time of the divorce, the parties shared equal parenting time. The family court revisited the custody of the children on multiple occasions as a result of petitioner relocating her residence subsequent to the divorce. This appeal stems from the family court's order designating respondent as the school year parent for the two children for the 2012-2013 school year and ordering regular parenting time for petitioner, which the circuit court affirmed by order entered November 30, 2012.

---

[1]Obviously, the 2012-2013 school year has passed, and the Court is not aware if petitioner has petitioned the family court for modification of custody for the 2013-14 school year. Rather than dismiss the case as moot, the Court deems it worthwhile to address the merits of petitioner's appeal.

1

Because petitioner's assignments of error reference prior orders of both the family court and the circuit court, it is necessary to briefly examine the relevant procedural background of this matter. At all times relevant, respondent has lived in the Cross Lanes area. Sometime in late 2009 or early 2010, petitioner relocated from South Charleston to the Putnam or Cabell County area.[2] Subsequent to petitioner's relocation, the parties sought a modification to their respective parenting time. By order entered on May 13, 2010, Family Court Judge Mark Snyder found that the children would have a much more stable environment in the Cross Lanes area and attending school there. The order stated, in part, that "[i]t is intended that the parties can continue to exercise their equal shared parenting plan as long as [petitioner] moves to the Cross Lanes area by the start of the 2010 school year so that the children have the choice of riding the bus to respondent's home if petitioner is held up at school." The order went on to state that if petitioner chooses not to move to the Cross Lanes area, the children will primarily reside with respondent.[3]

Judge Snyder held a final hearing on the requested modification on September 20, 2010. Petitioner chose not to relocate to the Cross Lanes area, asserting she could not afford the additional housing and transportation costs. On April 25, 2011, Judge Snyder entered an order ruling, in pertinent part, "[t]hat the children attend school in Cross Lanes," and

> [t]hat the parenting time be equally shared between the parties as long as they live within the Cross Lanes/Nitro school district. If the parties don't live within the same school district, then the party living in the school district should be designated primary residential and custodial parent. The other parent should exercise parenting time at least one night a week after 8:00 p.m., and every other weekend from after school on Friday until 8:00 p.m. on Sunday.

The children's interests were represented before Judge Snyder by guardian ad litem, Kelly Pritt, who recommended that the children live with respondent as they would be more stable in respondent's school attendance area. Additionally, Judge Snyder received a report from a home study evaluator, whose recommendations concurred with the then-guardian ad litem.

Petitioner appealed the April 25, 2011, order to circuit court, and by order entered on August 3, 2011, the court remanded the case back to family court "to enter an appropriate Final Order on the matter of the modification of the parents' parenting time and custodial arrangement of their minor child,[4] including making specific findings of fact, with citations to the evidence

---

[2]Petitioner was enrolled full-time in a doctorate program at Marshall University. The family court found that as a result of her full-time enrollment, the children spent a large amount of time in daycare and in after-school care while residing with her.

[3]This order was subsequently vacated by Judge Snyder on August 10, 2010, after determining that the order did not state that it was to be temporary and that a final hearing was necessary.

[4]The remand order referenced only one child, M.C., however, it is clear from the record that the custody dispute involved both children.

and testimony presented below, as well as, specific conclusions of law based on the applicable law and pertinent facts."

On remand, the matter was reassigned to Family Court Judge Mike Kelly.[5] Judge Kelly held a hearing on November 23, 2011, and by order entered January 9, 2012, maintained respondent as the residential parent. The family court also appointed a new guardian ad litem for the two children, Sharon Childers, and scheduled a hearing for July 19, 2012, to determine the residential parent for the then-upcoming 2012-2013 school year. Additionally, at the guardian ad litem's request, the family court appointed separate counsel to represent M.C., the older of the two children, who was thirteen years old at the time.[6]

At the July 19, 2012, hearing, the guardian ad litem testified that respondent should remain as the children's school year parent, and recommended regular parenting time for petitioner on certain weekends and one evening during the week.[7] The guardian ad litem's recommendation was based on the following: (1) the best interest of the children is served by keeping them together in the same household;[8] (2) the children have structure and stability with respondent; (3) the children have done well in school, and there were no attendance issues while with respondent; (4) the younger female child is shy and has difficulty adjusting; (5) despite his wishes to do so, it is not in the son's best interest for him to live with petitioner; (6) there were privacy issues with the living arrangements in petitioner's residence; and (7) petitioner did not have a specific plan to get the children to the bus stop in the morning. The guardian ad litem was subject to cross-examination by both petitioner's counsel and M.C.'s appointed counsel.

The guardian ad litem further testified that both parents were fit parents, and that M.C.'s decision that he wanted to live with petitioner was firm and reasonable. However, she testified that his decision was not mature in that it was based on respondent being strict about school and petitioner's discussions about buying him a "mo-ped" scooter. Respondent testified that petitioner did not take an active role in the children's education. He also testified that M.C. had been diagnosed with Attention Deficit Disorder ("ADD"). During her testimony, petitioner had difficulty naming the children's teachers, but stated that she believed they were doing well in their current school.

---

[5]Petitioner states that Judge Snyder recused himself when the matter was remanded to family court. However, the appendix record does not include an order stating the reasons for the reassignment to Judge Kelly.

[6]M.C. had expressed his desire to reside with petitioner, which was contrary to the guardian ad litem's recommendation.

[7]Petitioner's counsel objected to the introduction of the guardian ad litem's report on the basis that he received it only a few days before the hearing. However, he stated that he had reviewed the report and was prepared to proceed with the hearing.

[8]Both parties testified that they wanted the children to remain together.

3

By order entered on August 20, 2012, Judge Kelly designated respondent as the 2012-2013 school-year residential parent for the two children and ordered that petitioner have the children three weekends per month and one weekday after school. The family court found, in part, that M.C. was facing a difficult transition from middle school to high school, and the court was concerned with a change in his residence; that the court was not presented with a plan for how 50-50 parenting could work, given the distance between petitioner's and respondent's residences; and that the court will "consider the school year parenting designation on a year-to-year basis, upon a petition to modify."

Petitioner appealed to circuit court. By order entered November 30, 2012, the court refused her appeal. Contrary to petitioner's argument, the court found that the issue of remand was addressed appropriately by the family court's hearing on November 23, 2011, and its January 9, 2012, order that continued respondent's designation as residential parent and that set the matter for evidentiary hearing in July of 2012.[9] The court also found that despite her objection that she received the guardian ad litem's report only a few days before the July 19, 2012, hearing, petitioner's counsel elected to proceed with the hearing, stating that he had reviewed the report. Additionally, the court found that all parties had ample opportunity to cross-examine the guardian ad litem at the hearing. Finally, as to M.C.'s desire to live with petitioner, the court found that the wishes of the child are not dispositive of his custody, and that the family court did not abuse its discretion in refusing to follow M.C.'s wishes given the evidence of his ADD and transition to high school. From this order, petitioner appeals to this Court.

"In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo.*" Syllabus, *Carr v. Hancock,* 216 W.Va. 474, 607 S.E.2d 803 (2004). Additionally, with respect to child custody matters, we have held:

> The exercise of discretion by a trial court in awarding custody of a minor child will not be disturbed on appeal unless that discretion has been abused; however, where the trial court's ruling does not reflect a discretionary decision but is based upon an erroneous application of the law and is clearly wrong, the ruling will be reversed on appeal. [citations omitted].

Syl. Pt. 2, *In re: Antonio R.A.,* 228 W.Va. 380, 719 S.E.2d 850 (2011).

On appeal, petitioner raises seven assignments of error. First, she argues that the circuit court erred by affirming the "first order" of the family court because that order was unconstitutional. Petitioner contends that the order was tantamount to telling her that she will lose fifty percent custody of her children unless she relocates her residence, which she contends that she could not afford to do. Petitioner does not expressly identify which order is the "first order," but we presume she is referring to the April 25, 2011, order entered by Judge Snyder. Petitioner's argument must fail because, first and foremost, the record does not reflect that the

---

[9]Petitioner's counsel drafted the January 9, 2012, order that set the matter for hearing.

circuit court affirmed that order. To the contrary, the circuit court remanded the case back to the family court.

Nevertheless, looking at the substance of the April 25, 2011, order, we agree with the guardian ad litem's argument that the order did not expressly threaten petitioner with a loss of custody if she did not relocate. It was disputed whether the cost of the move rendered it impossible for petitioner; it is not clear from the record that petitioner established that she could not afford to relocate. In any event, the focus of the order was not as much petitioner's residence as it was the best location for the children to be enrolled in school. Based on the evidence that the children were most stable in the Cross Lanes school district, the family court determined, in concurrence with the then-guardian ad litem, that the children should remain in that school district. In custody matters, the paramount consideration is "the best interests of the child." Syl. Pt. 5, in part, *Carter v. Carter,* 196 W.Va. 239, 470 S.E.2d 193 (1996). We, therefore, cannot find that the family court's determination regarding the stability of the children as set forth in the April 25, 2011, order violated petitioner's constitutional right to custody of her children, as she alleges.

Second, petitioner argues that the circuit court erred by finding that the family court complied with its remand order, which petitioner contends merely required a new order with findings of fact and conclusions of law, not another evidentiary hearing. Petitioner complains that Judge Kelly's post-remand treatment of the matter as requiring a *de novo* hearing resulted in the proceedings being delayed, which in turn, resulted in respondent having additional time to "toe the line" and build his case for custody. We disagree with petitioner. The record shows that Judge Kelly made the parties aware of his intention to schedule an evidentiary hearing when he called the parties together for the first time in November of 2011, three months after the remand. Not only did petitioner fail to challenge Judge Kelly's intention at that time, but her counsel also drafted the January 9, 2012, order that memorialized the scheduling of the hearing about which she now complains. The family court's handling of the remand was addressed by this January 9, 2012, order. We agree with the circuit court that the time for petitioner to have appealed the handling of the remand by Judge Kelly to circuit court had long passed.

Petitioner's third and seventh assignments of error relate to the lower court's treatment of M.C.'s desire to have petitioner designated school-year parent. In her third assignment of error, petitioner argues that the family court and circuit court erred by ignoring the wishes of the older child, M.C., who would turn age fourteen about three weeks from the time of the final hearing. Petitioner contends that the lower courts violated West Virginia Code § 44-10-4(a), which states:

> If the minor is above the age of fourteen years, he or she may in the presence of the circuit or family court, or in writing acknowledged before any officer authorized to take the acknowledgment of a deed, nominate his or her own guardian, who, if approved by the court, shall be appointed accordingly.

In her seventh assignment of error, petitioner and counsel for M.C. similarly argue that the lower courts failed to abide by West Virginia Code § 48-9-206(a)(2), which provides that one of the objectives to be achieved in allocating custody is as follows:

5

> To accommodate the firm and reasonable preferences of a child who is fourteen years of age or older, and with regard to a child under fourteen years of age, but sufficiently matured that he or she can intelligently express a voluntary preference for one parent, to give that preference such weight as circumstances warrant;

Counsel for M.C. contends that because the guardian ad litem admitted that M.C.'s desire to live with petitioner was firm and reasonable, and that petitioner was fit, West Virginia Code § 48-9-206(a)(2) does not provide the lower courts with discretion in considering what it feels is in the child's best interest.

Even if we were to treat M.C. as a fourteen-year-old or a sufficiently mature thirteen-year-old, we do not believe the lower courts erred in designating his father as school-year parent. We have held that "while a child over the age of fourteen may have an absolute right to *nominate* his or her own guardian, a court is not bound to *appoint* such guardian." *In re: Antonio R.A.,* 228 W.Va. 380, 386-87, 719 S.E.2d 850, 856-57, citing *S.H. v. R.L.H.*, 169 W.Va. 550, 289 S.E.2d 186 (1982) (emphasis in original). The family court looked at M.C.'s best interest by considering his special academic needs, his ADD diagnosis, the transition from middle school to high school, the evidence of the stability that respondent's residence provides, and the desire to keep the children together. The court took the additional step of appointing M.C. separate counsel to present M.C.'s wishes to the court and to cross-examine the guardian ad litem. Given that both guardians ad litem involved in this case, as well as a home evaluator, concluded that M.C.'s best interest was served by his residence with respondent, we cannot conclude that the lower courts abused their discretion in allocating custody of M.C. to respondent. *See Carter, supra.* Further, the family court expressly invited the parties to petition for modification in the future, evidencing the court's willingness to review custody before each school year should the circumstances with M.C. change.

Additionally, we conclude that the designation of respondent as school-year parent is consistent West Virginia Code § 48-9-206(a)(6), which states that one of the objectives to allocating custody is:

> To avoid an allocation of custodial responsibility that would be extremely impractical or that would interfere substantially with the child's need for stability in light of economic, physical or other circumstances, including the distance between the parents' residences, the cost and difficulty of transporting the child, the parents' and child's daily schedules, and the ability of the parents to cooperate in the arrangement;

Petitioner's fourth and fifth assignments of error relate to recommendations of the original guardian ad litem who participated in the proceedings before Judge Snyder. Petitioner argues that the family court erred by failing to find that those recommendations were factually wrong and motivated by a prejudice against petitioner. The record is clear that those proceedings resulted in an order by Judge Snyder that petitioner appealed to circuit court, and that the circuit court remanded the matter back to family court. On remand, Judge Kelly announced in a January 9, 2012, order that he scheduled an evidentiary hearing in July of 2012, appointed a different guardian ad litem (who, importantly, made the same recommendations as the original guardian

ad litem) in April of 2012, and ultimately held an evidentiary hearing on July 19, 2012. We find that the time to appeal the orders from the proceedings before Judge Snyder involving the recommendations of the original guardian ad litem has long passed. Accordingly, we decline to address petitioner's fourth and fifth assignments of error.

Last, petitioner argues that the family court should have disregarded the second guardian ad litem's report because: (1) her report was submitted less than ten days prior to the July 19, 2012, hearing in violation of West Virginia Code § 48-9-301(c), (2) the report was submitted more than sixty days after the guardian ad litem's appointment in violation of Rule 47 of the West Virginia Rules of Practice and Procedure for Family Court, (3) the guardian ad litem failed to immediately make contact with the child and parents upon her appointment in violation of the Guidelines for Guardian Ad Litem in Family Court, (4) her recommendations failed to address the unconstitutionality of placing the children with respondent, (5) she failed to address the fact that the time spent with respondent as a result of the unconstitutional order should not have been considered, (6) her recommendation was contrary to West Virginia Code § 44-10-4 with respect to honoring the wishes of M.C., and (7) her recommendation was contrary to West Virginia case law.

We have already addressed the fourth, fifth, sixth, and seventh points of petitioner's argument in this decision. Turning to the timeliness of the guardian ad litem's submission of her report and the initial contact with the parties to her investigation, we find that the record supports the circuit court's rejection of petitioner's arguments. First, although petitioner may have received the report four days prior to the hearing, her counsel objected, and the family court offered to postpone the hearing until the expiration of the ten day period. Despite this offer, petitioner's counsel stated he had reviewed the report and was prepared to go forward with the hearing on July 19, 2012. The record reveals that the parties had the opportunity to cross-examine the guardian ad litem during the hearing. Additionally, based on the record, we cannot find that the circuit court erred in its agreement with the family court that the guardian ad litem's investigation was complete and that she contacted all proper parties within a reasonable time after her appointment. We see no error with respect to the lower court's acceptance of the guardian ad litem's report.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 18, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

7